CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JAN 0 6 2006
JOHN F. CORCORAN, CLERK
BY: /s/ H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KEVIN JOHNSON, # 185492,<br>Plaintiff, | )<br>)<br>) Civil Action No. 7:05cv00728 |
| v. | ) <br>) **MEMORANDUM OPINION** |
| JERRY KILGORE, et al.,<br>Defendants. | )<br>) By: Jackson L. Kiser<br>) Senior United States District Judge |

Plaintiff Kevin Johnson, # 185492, a Virginia inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343.[1] In his complaint, plaintiff alleges that while incarcerated at Red Onion State Prison ("ROSP") his constitutional rights have been violated in the following respects:

1) his current incarceration in a "supermax" prison in a predominantly white area in rural southwestern Virginia is racially motivated;

2) the lights in his cell are illuminated 24 hours a day;

3) a) he is being given inadequate food and no nutritional supplements;

   b) the drinking water is contaminated;

   c) meals are served in an unsanitary manner;

4) he is forced to discuss his medical problems in a non-private area;

5) he was denied adequate medical care related to symptoms stemming from inadequate food, a lack nutritional supplements, and contaminated water;

6) on multiple occasions correctional officers have falsely charged him with indecent exposure and have placed a flap over his cell window;

---

[1] By order entered November 28, 2005, this matter was transferred to this court from the United States District Court for the Eastern District of Virginia.

7) prison officials have not properly staffed the institutional medical unit;

8) he had a heart attack on December 20, 2004, but was denied adequate medical treatment;

9) he was denied prescribed medication for persistent nose bleeds;

10) air circulation within the prison is poor;

11) the metal shackles used to restrain prisoners cause rubbing, limbs to be placed in an unnatural position, and may allow cross-contamination of infectious diseases among prisoners;

12) a) he has been denied adequate and fair access to the institutional grievance system;

   b) he had been denied fair and unbiased institutional disciplinary hearings;

13) correctional officers have read, copied, and stolen some of his legal papers; and

14) he is not permitted to receive incoming personal mail which exceeds one ounce in weight.

Johnson names more than sixty defendants and seeks injunctive and monetary relief.

After reviewing his complaint, I am of the opinion that Johnson's claims must be dismissed pursuant 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## I.

A petition may be dismissed under 28 U.S.C. § 1915A(b)(1) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United

2

States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). However, a complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under 28 U.S.C. § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

## A.

In claim 1, Johnson alleges that his placement in administrative segregation in a "supermax" prison in rural, southwestern Virginia is unnecessary and is racially motivated.[2] To the extent this claim can be construed to allege violations of Johnson's Eight and Fourteenth Amendment rights, it fails.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). On the other hand, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347. As a result, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must demonstrate that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). Additionally, the plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created

---

[2] Johnson "cites" multiple instances of an allegedly "racist agenda" including the prison's location, the large population of African American inmates in the prison system, and the promotion of "token" minorities within the Virginia Department of Corrections.

3

an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While isolation and segregation conditions, and the emotional difficulties plaintiff alleges he has suffered, may be inconvenient and unfortunate, he has not alleged anything to suggest that these conditions violate contemporary standards of decency. Nor has plaintiff demonstrated that because of the conditions he has sustained a serious or significant injury or is at risk of a future injury. Therefore, he has failed to state a constitutional claim under the Eighth Amendment.

Furthermore, although the Fourteenth Amendment does afford prisoners some due process rights, when a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Such confinement is necessarily subject to the broad discretion of those parties managing the jail. Id. However, the confinement does not strip the inmate of all of his liberty interests. Id. "These interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoners's location, variations of daily routing, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston, 946 F.2d at 343. Furthermore, such changes are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Id.

Accordingly, even assuming there was some punitive or racially motivated purpose

4

underlying Johnson's placement at ROSP, unless the conditions to which Johnson was subjected to as result of this action represented a dramatic departure from the conditions contemplated by his original sentence, he is not entitled to relief. Meachum v. Fano, 427 U.S. 215, 223-24 (1976)(finding that a prisoner has no due process right to be housed in any particular facility). And, as changes to an inmate's housing and place of incarceration are the normal and expected results of his criminal conviction, merely being housed in segregation unit does not state a constitutional claim. Furthermore, although couched in slanted terms, Johnson admits that he has actively opposed correctional officers and has encouraged other inmates to rise up against prison officials and officers. Additionally, Johnson admits that he has been convicted of numerous disciplinary infractions while imprisoned including assault, possession of weapons, and indecent exposure. Accordingly, as Johnson admittedly poses a substantial security threat to himself, other inmates, and prison officials I find that his continued placement in a maximum security segregation unit is properly left to the broad discretion of prison administrators. See id.

Therefore, I find that Johnson has failed to allege facts which presents a claim of constitutional magnitude. Accordingly, I find that these allegations must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### B.

In claims 2, 3, and 10, Johnson complains about the living conditions which he has been forced to endure while imprisoned at ROSP. Johnson laments that lights are left on in the cells twenty four hours a day, that he is receiving inadequate food and no nutritional supplements, that food is served in an unsanitary manner and water is contaminated, that at times his cell window is covered with a flap, and that the prison has inadequate ventilation.

As noted above, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege that the alleged condition violates contemporary standards of decency, that prison officials are deliberately indifferent to that condition, and that as a result of the alleged condition he has sustained a serious or significant mental or physical injury or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler, 989 F.2d at 1380-81 (4th Cir. 1993); Helling, 509 U.S. 25 (1993). Although if true, these conditions may be uncomfortable, Johnson has failed to establish that these conditions violate contemporary standards of decency nor has he shown that any prison official or employee has been deliberately indifferent to any of the challenged living conditions. Furthermore, Johnson has failed to show he has suffered any significant or serious injury as a result of these conditions.

First, Johnson complains of any eye disorder related to the lights, but admits that he has been examined by a prison physician who determined that no treatment was medically necessary.[3] Accordingly, as Johnson admits the lights are dimmed for at least eight hours a day and that he has suffered no injury which necessitates medical treatment, I find that he has failed to raise a claim of constitutional magnitude as to this condition.

Second, Johnson complains that he has been denied adequate food and/or nutritional supplements. Specifically, he complains that he is receiving inadequate fiber sources and the fruit and vegetables served are unripe, rotten, or overcooked. He further complains that prison officials have reduced the number of meals on weekends and holidays, thereby denying him adequate

---

[3] Furthermore, the court notes that Johnson previously raised a nearly identical claim in Civil Action No. 7:99cv00566, Johnson v. Trayler, et al.. By Memorandum Opinion and Order entered September 15, 1999, the court dismissed this claim under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

6

calories. Johnson also complains that water is discolored and sometimes has black particles floating in it; and, it is an "acknowledged" fact that the prison water source is contaminated. Finally, Johnson complains that the prison's food serving method is unsanitary as the guards touch door handles, cups, trays, and the inside of prisoner's tray slots when delivering the meals, causing the transfer of "microorganisms" between cells. Johnson complains that as a result of these conditions his weight has fluctuated and that other prisoners have suffered from diarrhea, vomiting, hemorrhoids, and "spinal arthritis." However, mere allegations of inadequate food and unsanitary conditions without showing any deleterious effects fails to state a claim under the Eighth Amendment. White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993). As minor weight fluctuations and occasional bouts of diarrhea and vomiting are normal occurrences in life and can be attributed to stress and minor illness, I find these allegations are insufficient to state a claim of serious injury. Further, although Johnson complains that other inmates have suffered from hemorrhoids and "spinal arthritis" he does not allege that he personally is suffering from hemorrhoids or "spinal arthritis" nor has he established that either condition is reasonably attributable to his dietary concerns or unsanitary food serving methods. Accordingly, I find these claims must also be dismissed.

Third, Johnson alleges that ROSP has an inadequate ventilation system. And, as a result of the inadequate "fresh air," Johnson claims he has suffered from occasional nose bleeds. However, Johnson admits that there is air flowing continually to and from the cells. Further, Johnson's claims that the poor ventilation causes him to suffer nosebleeds is completely conjectural; and, even if true such a claimed injury is de minimis. Additionally, I find that Johnson has failed to allege sufficient fact to establish that prison officials have been deliberately indifferent to any shortcomings in the

7

prison ventilation system. Accordingly, I find this claim must too be dismissed.[4]

Accordingly, I find that all Johnson's allegations raised in Claims 2, 3, and 10 must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## C.

In claim 4, Johnson alleges that he has been forced to discuss his medical history and medical complaints in a non-private setting and, as a result of these discussions, other inmates now believe he is suffering from a communicable disease. Although it may be unfortunate that other inmates have overheard Johnson's medical history and complaints, there is no general fundamental right to privacy in personal medical information. See Watson v. Lowcountry Red Cross, 974 F.2d 482, 487-89, n.9 (4th Cir. 1992); Taylor v. Best, 746 F.2d 220, 225 (4th Cir. 1984); Sherman v. Jones, 258 F.Supp. 2d 440, 444 (E.D. Va. 2003)(finding plaintiff's constitutional rights were not violated when other inmates overheard his medical history). Accordingly, I find this claim must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## D.

In claim 5, Johnson asserts that on October 15, 2004, he was moved to the medical unit for testing to determine the cause of his weight loss. While celled in the medical unit, Johnson encouraged another prisoner to file a civil lawsuit regarding an alleged use of excessive force. Johnson claims that Correctional Officer S. Long and Nurse T. Phipps overheard this conversation and in retaliation for encouraging another inmate to file a civil action, destroyed

---

[4]Furthermore, the court notes that Johnson previously raised a nearly identical claim in Civil Action No. 7:99cv00566, Johnson v. Trayler, et al.. By Memorandum Opinion and Order entered September 15, 1999, the court dismissed this claim under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

8

Johnson's test results. He further states that those officers caused Johnson to be prematurely discharged from the medical unit on October 16, 2004. However, Johnson's symptom's persisted and he was returned to the medical unit on December 17, 2004. Thereafter, the prison physician, Dr. Williams, order off-site testing, but Johnson alleges that Correction Officer C. Branham and Nurse L. Holsapple forged Johnson's signature on a form which stated that he refused to be "prepped" for or to receive any off-site medical services. He now claims that although he continues to suffer from conditions which may be indicative of cancer, the prison physician refuses to send him for any further testing.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendant had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). "'A serious medical need' is 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Shelton v. Angelone, 183 F.Supp.2d 830, 840 (W.D.Va. 2002) (quoting Cox v. District of Columbia, 834 F.Supp. 439, 441 (D.D.C. 1992)).

Although plaintiff claims that defendants alleged destruction of his test results and forgery prevented him from being transferred to an off-site facility for additional testing, he admits that Dr. Williams examined him on numerous occasions, ordered necessary in-house diagnostic testing, rendered a diagnosis, and determined that no further treatment or testing was

9

necessary, even after the alleged malfeasance. Accordingly, it is apparent that institutional medical personnel have determined that Johnson is not suffering from a serious medical need which necessitates further testing or treatment. Thus, he cannot show that defendants were deliberately indifferent as to any serious medical need. Further, as mere disagreements between an inmate and medical personnel over diagnosis or course of treatment do not state cognizable constitutional claims under the Eighth Amendment, I find this claim must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06.

### E.

In claim 6, Johnson purports that on multiple occasions correctional officers have falsely accused him of indecent exposure and have placed a flap over his cell window. Johnson claims that as a result of this flap he has been embarrassed and other inmates have threatened him, thrown body waste on him, and on two occasions have stabbed him. However, Johnson does not allege that any of the named correctional officers or prison officials have actually physically harmed him or provoked other inmates to harm him. Nor does he allege that prison officials have ignored the alleged instances of assault related to the flap covering.

To the extent Johnson alleges that the false charges and the covering of his cell window with a flap constitute a violation of the rights afforded under the Eighth or Fourteenth Amendment, they must fail. While having his cell window temporarily covered may be discomforting and may have caused Johnson some embarrassment, Johnson has not alleged anything to suggest that these because of the covering, he sustained a serious or significant injury or is at risk of a future injury. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993);

10

Helling v. McKinney, 509 U.S. 25 (1993). Therefore, he has failed to state a constitutional claim under the Eighth Amendment.

Furthermore, Johnson fails to allege facts indicating that he has been deprived of any federally protected liberty interest without due process. Johnson alleges that he was falsely charged for making lewd and/or obscene gestures; however he has presented no evidence other than his own statement that he did not in fact do the act of which he was charged. Additionally, he presents no evidence to support his claim that the witnessing correctional officers fabricated those charges. However even assuming that the correctional officer made a false report resulting in those charges, such violations of state procedural law do not implicate federal due process rights and are not cognizable under §1983. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

Additionally, to the extent that Johnson's claims that correctional officers failed to protect him from other inmates after covering his cell window, it fails. Generally, prison officials have a duty to protect prisoners from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). However, not every incident of violence subjects prison officials to liability under the Eight Amendment. Id. at 834. Rather, the inmate must show that prison officials were deliberately indifferent to a substantial risk of serious harm. Id. Deliberate indifference requires a showing that defendants were more than just negligent as to the plaintiff's safety. Estelle v. v. Gamble, 492 U.S. 97, 104 (1976). Specifically, plaintiff must show that prison officials knew of and disregard an excessive risk of harm. Farmer, 511 U.S. at 838.

Plaintiff alleges that due to the flap covering his cell window other inmates threatened him, threw body waste on him, and stabbed him. However, Johnson does not allege that correctional officers knew of any threats, had any reason to believe that any other inmate posed a

11

significant threat to Johnson, nor does he allege that correctional officers instigated or ignored any threat once known. Therefore, I find that Johnson has failed to present any evidence which suggest defendants were deliberately indifferent to a substantial risk of serious harm.

Accordingly, I find that all Johnson's claims regarding allegedly false disciplinary charges, the covering of his cell window, and any subsequent altercations with other inmates must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**F.**

In claim 7, Johnson asserts that although the Virginia Department of Corrections' policy requires that the medical unit be staffed by at least one Registered Nurse at all times, the ROSP medical unit is frequently staffed by only Licensed Practical Nurses. However, Johnson has not alleged any specific harm or injury reasonably attributable to this alleged staffing problem. Accordingly, I dismiss this claim as frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

**G.**

In claim 8, Johnson alleges that on December 20, 2004, while celled in the prison medical unit, he suffered from "what was obviously a heart attack." He further claims that Nurse Holsapple was on-duty while he suffered the "heart attack," but was not in the medical unit and thus did not provide any medical attention. He further claims, that because his cell window was covered correctional officers did not conduct the required regular visual check of him on a regular basis, and therefore ignored his condition. He further laments that several hours later when he informed Nurses Phipps and Stidham of his "heart attack" and requested emergency medical attention, he was told to make a written sick call request.

As noted above, to establish deliberate indifference, a plaintiff must present facts to

12

evince that the defendant had actual knowledge of and disregard for an objectively serious medical need. Farmer, 511 U.S. 825; see also, Rish, 131 F.2d at 1096. Here, Johnson admits he suffered from "what was obviously a heart attack" several hours prior to the time he informed the nurses and correctional officers of the heart attack. And, as he does not allege that at the time he informed the nurses or correctional officers of his alleged condition he was in any pain nor exhibiting symptoms which would indicate that he needed immediate medical attention, I find that at that time it was not obvious that he had a serious medical need necessitating immediate, emergency medical attention. Therefore, this claim must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### H.

In claim 9, Johnson alleges that on December 17, 2004, Dr. Williams prescribed a nasal moisturizer to be administered twice a day to treat Johnson's nosebleeds, which if left untreated, could cause him to "bleed to death." However, Johnson claims that Nurses Stidham, Moore, and D. Lester refused to administer the spray, thus causing Johnson's nosebleeds to continue. Johnson has not presented any reasonable basis which supports his contention that his nosebleeds are life threatening or present any other threat of serious injury. Accordingly, as I find that nosebleeds amount to nothing more than a de minimis injury, this claim must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### I.

In claim 11, Johnson purports that the metal shackles used to restrain prisoners cause rubbing, limbs to be placed in an unnatural position, and may allow cross-contamination of infectious diseases among prisoners. To the extent this can be construed to allege that the use of

13

metal shackles constitutes a violation of the rights afforded under the Eighth Amendment, it fails. While having being restrained with metal shackles may be uncomfortable, Johnson has not alleged anything which suggests that he sustained a serious or significant injury or is at risk of a future injury due to the limited use of restraints. See Strickler, 989 F.2d at 1380-81; Helling, 509 U.S. at 25.

Further, although Johnson complains about the unnecessary use of restraints, he admits that he is housed in a maximum security prison and throughout his incarceration he has frequently resisted correctional officers' efforts to control him. Accordingly, I find it reasonable that correctional officers utilize restraints in a manner which most restricts his movements while he is in contact with prison personnel. Therefore, although unfortunate, it is clear that some rubbing or discomfort is reasonably necessary to ensure the safety of both Johnson and prison personnel.

Additionally, although Johnson alleges that in using these restraints guards have a "genocidal motive of spreading deadly viruses" between prisoners, he admits that the restraints are used on all prisoners regardless of race or religion. And, as the type and application of restraints utilized in the prison is necessarily left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively, this also fails to state a claim under the Fourteenth Amendment. Gaston, 946 F.2d at 343.

## J.

In claim 12, Johnson alleges that he has been denied adequate and fair access to the institutional grievance system and he has been denied fair and unbiased institutional disciplinary hearings. Inasmuch as a state grievance procedure does not confer any substantive right upon

14

prison inmates, a prison employee's failure to comply with the state's grievance procedure is not actionable under § 1983. Adams v. Rice, 40 F.2d 72 (4th Cir. 1994). Accordingly, any delay in a response to grievances or to properly process complaints does not raise a claim of constitutional magnitude.

Further, federal courts will not review the accuracy of a disciplinary committee's finding of fact. Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5 th Cir. 1981), cert. denied, 455 U.S. 992 (1982). As Johnson admits that during the disciplinary hearings there was video evidence, incident reports, and testimony which supported his convictions, it is clear that there was sufficient evidence to support his convictions.

And although Johnson claims that his disciplinary hearings were unfair because he was not present during the hearings, and thus was unable to present all evidence in his favor, an inmate is only afforded procedural protections, including the right to call witness and present evidence in his own defense, when the loss of statutory good time credits or some other liberty interest is at issue. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). As noted previously, a liberty interest arises when an atypical or significant hardship is imposed on the inmate. Sandin, 515 U.S. at 484. As Johnson alleges only that as a result of his convictions he has been denied phone privileges, which does not amount to an atypical prison condition, I find that he was not entitled to any procedural safeguards during the institutional hearing.

Accordingly, I find that Johnson has failed to raise an issue of constitutional magnitude and dismiss these claims pursuant to 28 U.S.C. § 1915A(b)(1).

15

**K.**

In claim 13, Johnson alleges that prison employees read, photocopied, and stole some of his legal documents thereby hindering his ability to pursue a civil action. Reasonable access by prisoners to both state and federal courts is a guaranteed right. Ex parte Hull, 312 U.S. 456 (1941); see Procunier v. Martinez, 416 U.S. 396 (1974). However, in addition to showing some interference with this right or some deficiency in the legal resources available to him, an inmate claiming officials have denied him access to the courts must produce evidence of actual injury or specific harm related to litigation involving a challenge to the conditions of his confinement or the fact of his confinement. Lewis v. Casey, 518 U.S. 343 (1996); Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993).

Johnson complains that prison officials are denying him access to the court by reading, copying, and sometimes stealing his personal documents; however, plaintiff's filing of the instant suit suggests that prison officials have not hindered his ability to correspond with the courts. Furthermore, Johnson has not made any allegation as to how any of the copied or stolen documents affected any pending case or that he missed any court imposed deadlines because any legal documents were copied or stolen. As such, he has failed to demonstrate any actual injury or specific harm and therefore fails to state a claim under the First Amendment. Accordingly, this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**L.**

Finally, in claim 14, Johnson laments that the prison policy prohibiting inmates from receiving incoming mail which exceeds one ounce in weight, is improperly hindering his ability to communicate. Although a prisoner retains certain First Amendment rights, including the right

16

to receive correspondence while incarcerated, the prison may place restrictions on inmates' receipt of written materials. Turner v. Safley, 482 U.S. 78, 89 (1987). And, to the extent those regulations infringe on an inmate's constitutional rights, so long as they are "reasonably related to a legitimate penological interest" those restrictions are valid. Id. In order to determine if the regulation relied upon is constitutionally permissible, the court must consider the following factors: 1) whether there is a logical connection between the regulation and a legitimate governmental interest; 2) if the inmate has an alternate means of exercising the right in question; and 3) if accommodating the inmate's right would severely impact other inmates, prison officials, and allocation of prison resources. Id. at 89-90. However, the court must give prison officials considerable deference in determining what regulations are reasonably necessary to maintain order and safety within the institution. See Thornburgh v. Abbott, 490 U.S. 401, 404-07 (1989).

Although Johnson contends that the prison's policy of limiting the size of incoming personal letters has been implemented to specifically restrict his ability to have his written and artistic works published, he admits that the prison policy is applied to all prisoners' incoming personal correspondence. Accordingly, the court need only consider if the prison's weight limitation is reasonably related to a "legitimate peneological interest." Turner, 482 U.S. at 87. It is clear that prison administrators have a legitimate interest in maintaining safety and order within the institution. See Hodges v. Virginia, 871 F.Supp. 873, 876 (W.D.Va. 1994), rev'd on other grounds, Montcalm Publ. Corp. v. Beck, 80 F.3d 105 (4th Cir. 1996)(finding that security, discipline, order, public safety, and rehabilitation interests need no defense). Furthermore, in light of evidence that extremely lengthy correspondence and stuffed envelopes can be used to smuggle contraband into prison and a significant amount of time would be devoted to inspecting

17

the potentially voluminous pages which can be crammed into one envelope, a policy which permits inmates to only receive incoming personal correspondence weighing less than one ounce does not violate an inmate's First Amendment rights. See Bell v. Wolfish,441 U.S. 520, 550-551 (1979), Zacek v. Hutto; 642 F.2d 74, 75 (4 th Cir. 1981). Therefore, I find this claim must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## II.

Based on the foregoing, I find that Johnson has failed to raise any claims of constitutional magnitude. Accordingly, I find that his complaint must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion and accompanying Order to plaintiff.

ENTER: This 6th day of January, 2006.

Senior United States District Judge